# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JUSTIN ABBOTT                                    CIVIL ACTION

VERSUS

TOWN OF LIVINGSTON, ET AL.              NO.: 16-00188-BAJ-EWD

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 74)** filed by
Defendants, Parish of Livingston; Cheryl Smith, in her official capacity as the Medical
Administrator of the Livingston Parish Detention Center (LPDC); and Misha
McNabb, in her official capacity as Nurse Administrator at LPDC (collectively "the
Municipal Defendants"). Also before the Court is the **Motion for Summary
Judgment (Doc. 82)** filed by Defendant, Deputy Brian Reeves of the Livingston
Parish Sheriff's Office; and the **Motion for Summary Judgment (Doc. 83)** filed by
Defendant, Sheriff Jason Ard, Sheriff of Livingston Parish, State of Louisiana.

All Defendants seek the dismissal of the claims brought by Plaintiff, Justin
Abbott pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff filed an
Opposition to each motion. (Docs. 77, 90, 91). Each Defendant then filed a Reply.
(Docs. 79, 95, 96). The Court has jurisdiction under 28 U.S.C. § 1331. Oral argument
is not necessary. For the reasons explained herein, the **Motion for Summary
Judgment (Doc. 74)** filed by the Municipal Defendants is **DENIED WITHOUT
PREJUDICE**. The **Motion for Summary Judgment (Doc. 82)** filed by Deputy

Reeves is **GRANTED**. The **Motion for Summary Judgment (Doc. 83)** filed by Sheriff Ard is **GRANTED**.

## I. BACKGROUND

Plaintiff, a pretrial detainee in the Livingston Parish Detention Center ("LPDC") asserts constitutional violations that began on September 30, 2015, when he was arrested and taken into LPDC custody, and ended on October 6, 2015, upon his release from LPDC custody.

### A. Plaintiff's Arrest

On September 30, 2015, Deputy Reeves was dispatched to the scene of a reported domestic abuse battery incident. (Doc. 83-2 at ¶ 1). Upon arrival, Deputy Reeves met and spoke with the complainant, Stacie Abbott ("Mrs. Abbott"), who informed him that she and her husband, the Plaintiff, were involved in a physical altercation, which prompted her to contact law enforcement. (*Id*. at ¶ 2). During the altercation, "[Mrs.] Abbott ended up on the ground and grabbed the leg of [Plaintiff] and bit him on his left leg." (Doc. 91-1 at ¶ 4). However, according to Deputy Reeves, the injuries observed on both Plaintiff and Mrs. Abbott were consistent with Plaintiff as the aggressor in the domestic dispute; thus, Deputy Reeves arrested Plaintiff for domestic abuse battery. (Doc. 83-2 at ¶¶ 3–4). Mrs. Abbott was asked to complete a "voluntary statement" regarding the incident. (Doc. 83-4). In that statement, Mrs. Abbott reported that "[Plaintiff] jerked [her] out of bed by the hair . . . [and] punched [her] in the right eye[, and] pushed [her] into [the] nightstand[, and] hurt [her] right knee." (*Id*.).

2

After the incident, Plaintiff, who was wearing shorts, informed Deputy Reeves that he needed medical attention due to the bite mark on his leg, which was bleeding down his leg through his sock. (Doc. 91-1 at ¶¶ 7–9). Deputy Reeves, however, transported Plaintiff directly to LPDC. (Doc. 83-2 at ¶ 6). Upon arrival, the medical staff at LPDC did not instruct Deputy Reeves that Plaintiff needed to immediately be transported to a hospital or other healthcare facility. (*Id.*).

On the same day, after Plaintiff was booked into LPDC, Deputy Reeves completed a probable cause affidavit. (Doc. 83-5). In that affidavit, Deputy Reeves set forth the facts supporting Plaintiff's arrest.[1] (*Id.*). After reviewing the same, a district court judge of the 21st Judicial District Court, Parish of Livingston, State of Louisiana, determined that probable cause existed to arrest and hold Plaintiff. (*Id.*). Subsequently, on November 2, 2015, Mrs. Abbott recanted her prior statements and no longer desired to pursue charges against Plaintiff. (Doc. 91-5). On January 12, 2016, all charges relating to the September 30, 2015 arrest were dismissed. (Doc. 91-1 at ¶ 14).

---

[1] *See* Doc. 83-5. A summary of the facts are as follows: "[Law enforcement] responded to a call from a frantic female who reported that she had been physically attacked by her husband, [Plaintiff] . . . . She reported that she was woke up by [Plaintiff] when he asked her for his truck keys. She advised that, after telling him that she did not know where the keys were, he pulled her out of the bed by her head and hair and she fell into the nightstand, causing minor bleeding to her right shin. She advised that he also struck her on the right side of her face, evident by minor swelling near her right eyebrow. The victim admitted that she slapped at him and potentially bit him as she struggled against him . . . . [Plaintiff] stated that he woke [the victim] up and she attacked him because she was drunk. He advised that he defended himself and that he was bitten on the left calf. He also had a red mark on his left bicep. [Deputy Reeves] did not detect any signs or symptoms of intoxication when speaking with [the victim]."

## B. Plaintiff's Detention at LPDC

On September 30, 2015, upon entering LPDC, Plaintiff was triaged by Misha McNabb ("McNabb"), a Nurse Administrator within LPDC's medical department, at which time she noted the bite wound on Plaintiff's leg. (Doc. 77-1 at ¶ 5; Doc. 77-3 at p. 1). At the time, Plaintiff was also suffering from a sinus infection, depression, and anxiety, for which he had previously been prescribed medication. (Doc. 77-3 at p. 1).

On October 1, 2015, Plaintiff informed the medical staff that he needed medical attention due to the open wound on his leg, that he needed his various prescription medications, and that he was experiencing diarrhea. (*Id.* at p. 3). Medical personnel then took a photograph of Plaintiff's leg, which was deleted because the photograph "came out blurry." (*Id.* at p. 5). A new photograph was noted to "be taken at doctor [call]," presumably on the following Tuesday, October 6th. (*Id.*). That same day, Plaintiff's brother called LPDC's medical department to inform medical personnel that Plaintiff needed medical attention, his daily medications, and a psychiatrist, immediately. (Doc. 77-9). According to Plaintiff, "no employee or staff member within [LPDC] rendered any aid to [his] open wound;" instead, he "was placed within a cell where fecal matter was present." (Doc. 77-1 at ¶¶ 9–10).

On October 2, 2015, Plaintiff completed a written "Request for Medical Attention" form and indicated: "Need medication[,] sinus infection - drainage and cough - was taking Omnicef [and] Zertec-D [sic] before coming to LPDT [sic]. Severe diareah [sic] Detoxing - do not have my Zanax Rx [sic] - having anxiety." (Doc. 77-3 at p. 7).

4

Throughout Plaintiff's detention at LPDC, Mrs. Abbott also called LPDC's medical department to inform medical personnel that Plaintiff needed immediate medical attention due to his leg wound, his sinus infection, and his need for prescription medication. (Doc. 77-10). Throughout his detention, Plaintiff also allegedly experienced hallucinations, which necessitated the immediate need for his anxiety medication; and he "made several requests for medical attention [, but] all of his requests were denied." (Doc. 77-1 at ¶¶ 15–16).

On October 6, 2015, Plaintiff was scheduled to be released from LPDC on bond. (Doc. 77-1 at ¶¶ 20–21). As such, rather than visiting the LPDC physician for his appointment scheduled on that day, he elected to call his primary care physician, who prescribed him a "Z-pack" after being informed of Plaintiff's recurring sinus infection. (*Id.*; Doc. 74-4 at p. 17). Shortly thereafter, Plaintiff, who is certified in First Aid, administered first aid on his open wound. (Doc. 77-1 at ¶ 22; Doc. 77-7). He reportedly "went home and washed the wound with hibiclens." (Doc. 74-4 at p. 18).

On or about October 12, 2015, while Plaintiff was at work in the State of Florida, his leg started "to swell and ooze" and he could barely walk. (Doc. 74-4 at pp. 18–19). This prompted his supervisor to make arrangements for Plaintiff to be taken to the hospital. (*Id.* at p. 19).

On October 15, 2015, Plaintiff visited the emergency room for the first time. (Doc. 74-4 at p. 19). The treating physician diagnosed his wound as containing a growth of methicillin-resistant staphylococcus aureus ("MRSA"). (Doc. 77-12 at p. 41). Plaintiff now has an "atrophic scar" where the wound occurred. (Doc. 77-18).

On March 21, 2016, Plaintiff filed suit against the Municipal Defendants, Sheriff Ard, and Deputy Reeves asserting claims under 42 U.S.C. § 1983 and Louisiana state law. (Docs. 1, 63). Specifically, Plaintiff alleges § 1983 and state law claims against Deputy Reeves, in is individual capacity, for false arrest/false imprisonment, failure to provide medical attention, and negligent infliction of emotional distress. (*Id.*). The Court previously dismissed all claims brought against Sheriff Ard, with the exception of those claims for Sheriff Ard's vicarious liability arising under Louisiana state law for the actions of Deputy Reeves. (Doc. 81). Lastly, Plaintiff alleges § 1983 claims against the Municipal Defendants in their official capacities for failure to provide medical treatment under the Eighth[2] and Fourteenth Amendments, as well as claims for failing to preserve evidence. (Doc. 77-2).

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

---

[2] The Court notes that "[p]retrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and, with a relatively limited reach, from substantive due process. *Id.* The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Therefore, the Eight Amendment does not apply under the facts of this case.

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

III.   DEPUTY REEVES' MOTION FOR SUMMARY JUDGMENT

### A. Plaintiff's § 1983 Individual Capacity Claims against Deputy Reeves

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When pleaded in a motion for summary judgment, qualified immunity shifts the burden from the defendant to the plaintiff to establish, by competent evidence, that there is a genuine dispute of material fact with respect to whether (1) the official violated a clearly established statutory or constitutional right and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The United States Court of Appeals for the Fifth Circuit has held that even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified immunity immunizes "all but the plainly incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

### 1. False Arrest/False Imprisonment

Deputy Reeves argues that he had probable cause to arrest Plaintiff under La. Rev. Stat. §§ 14:35.3 and 44:2140; thus, he is entitled to qualified immunity for that arrest. (Doc. 82-1 at pp. 8–10). Deputy Reeves further argues that Plaintiff's false arrest claims should also be dismissed because an independent intermediary determined that probable cause existed to arrest and hold Plaintiff. (*Id.* at p. 11).

Plaintiff argues that Deputy Reeves did not have probable cause to arrest him because Deputy Reeves "ignored [his] version of [the] events," which would have shown him to be "merely the victim of [a] bite wound." (Doc. 90 at p. 4). Plaintiff further argues that because Deputy Reeves' actions were objectively unreasonable, he is not entitled to qualified immunity. (*Id.*).

In a § 1983 action alleging false arrest, courts "look to the totality of the circumstances to determine whether probable cause, or . . . arguable probable cause, existed." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 241 (1983)). Moreover, the Fifth Circuit has held that police "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988). The Fifth Circuit, however, has declined to decide whether police "must consider facts establishing an affirmative defense" in determining probable cause. *See Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000); *United States v. Craig*, 381 F. App'x 459, 461 (5th Cir. 2010). It is thus not clearly established that an officer must consider an affirmative defense—such as Plaintiff's version of the domestic dispute—when determining whether there is probable cause.

Moreover, Louisiana law expressly authorizes a law enforcement officer to arrest an abusive person when the officer "has reason to believe that a family or household member or dating partner has been abused." La. R.S. § 46:2140(B). "When a law enforcement officer receives conflicting accounts of domestic abuse or dating violence, the officer shall evaluate each account separately to determine if one party was the predominant aggressor." *Id.* at § 46:2140(C). After the officer determines that

one person was the predominant aggressor, he is permitted to arrest the aggressor, subject to finding that probable cause exists for said arrest. *Id.* at § 46:2140(3)(a).

Under the facts of this case, the Court finds that it was not objectively unreasonable for Deputy Reeves to arrest Plaintiff. The Court further finds that probable cause existed to support Deputy Reeves' determination that Plaintiff was the predominant aggressor in this instance. During her deposition, Mrs. Abbott confirmed that, on September 30, 2015, she reported to Deputy Reeves that Plaintiff grabbed her by the hair and pulled her from the bed. (Doc. 82-6). She further confirmed that, not only did she verbally report this to Deputy Reeves, she also completed a written statement, which provided that Plaintiff jerked her out of the bed by her hair, punched her in the eye, pushed her into a nightstand, and hurt her knee. (*Id.*; Doc. 82-4). Although Mrs. Abbott admitted that she slapped at Plaintiff and bit him as she struggled against him, and although Plaintiff stated that he only woke Mrs. Abbott up and she attacked him because she was drunk, after evaluating the facts and injuries, Deputy Reeves determined that Plaintiff was the predominant aggressor and that Mrs. Abbott's injuries were consistent with her version of the events. (Doc. 82-5).

In any event, in a § 1983 action, the Fifth Circuit has held that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir. 2010) (quoting *Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir. 1994)).

Here, Deputy Reeves completed an affidavit of probable cause following Plaintiff's arrest. (Doc. 82-5). That affidavit set forth the same facts discussed herein: that Deputy Reeves made contact with Mrs. Abbott, who reported that Plaintiff pulled her out of the bed by her head and hair, that she fell into the nightstand causing minor bleeding on her arm, that Plaintiff struck her in the face (evident by minor swelling near her eyebrow), and that Mrs. Abbott reported to Deputy Reeves that she may have slapped Plaintiff and potentially bit him during the struggle. (*Id.*). The affidavit also states that Deputy Reeves spoke with Plaintiff, and it sets forth Plaintiff's report of the incident, including his claim that he acted in self-defense and that Mrs. Abbott bit him. (*Id.*). After reviewing the same, a state district court judge determined that probable cause existed to arrest and hold Plaintiff. (*Id.*). Thus, it is undisputed that an independent intermediary was presented with the facts as outlined above and determined that those facts supported a finding that probable cause existed to arrest and detain Plaintiff.

Lastly, Plaintiff argues that the lack of probable cause for his arrest was confirmed by the Livingston Parish District Attorney's Office dismissal of the charges relating to the September 30, 2015 arrest. (Doc. 90 at p. 4). However, the Court notes that "[w]hether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis. The inquiry focuses only on what the officer could have reasonably believed at the time based on the relevant law, as well as the facts supplied to him by the eyewitness." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 754, n.10 (5th Cir. 2001). Therefore, the § 1983 false arrest claim against Deputy Reeves is dismissed.

## 2. Failure to Provide Medical Treatment[3]

Deputy Reeves argues that Plaintiff has not established sufficient evidence to prove that he was deliberately indifferent to Plaintiff's medical needs; thus, he is entitled to qualified immunity. (Doc. 83-1 at p. 14). Plaintiff argues that "[Deputy] Reeves clearly and unequivocally acted with deliberate indifference to [his] medical needs [] because [Deputy] Reeves knew that [he] had an open wound that was bleeding at the time of his arrest, yet failed to provide medical attention or escort [him] to a medical facility, prior to [bringing] [him] to the jail." (Doc. 90 at p. 5).

Deliberate indifference is an extremely high standard to meet, one that has been equated to "'[s]ubjective recklessness,' as used in the criminal law." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 838-40 (1994)). Under this standard, a state actor may not be held liable under § 1983 unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838. "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Rogers v. Boatright*, 709 F.3d 403, 409-10 (5th Cir. 2013) (quoting *Gobert v. Caldwell*, 463 F.3d 359, 346 (5th Cir. 2006)). A prisoner who alleges that he

---

[3] The Court notes that Plaintiff's "failure to provide medical treatment" claims against both Deputy Reeves and Sheriff Ard are limited to conduct that occurred prior to his detention at LPDC. (*See* Docs. 90, 91). Thus, any claims for failure to treat Plaintiff's injuries after his detention are not directed at Deputy Reeves or Sheriff Ard.

should have received additional treatment "is a classic example of a matter for medical judgment." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

Furthermore, to establish deliberate indifference, a plaintiff must show that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Additionally, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Here, the Court finds that Plaintiff has failed to set forth sufficient evidence to support his deliberate indifference claim against Deputy Reeves. There has been no evidence to show that Deputy Reeves disregarded an excessive risk to Plaintiff's health. In fact, Deputy Reeves transported Plaintiff directly to LPDC where he was triaged by a nurse immediately upon arrival. (Doc. 77-3). Notably, Deputy Reeves was not instructed by medical personnel to transport Plaintiff to a hospital, but had he been given that instruction he would have done so. (Doc. 82-3 at ¶ 9).

Likewise, even with the presence of the bleeding bite wound, there has been no evidence to support Plaintiff's contention that the facts were such that Deputy Reeves should have drawn an inference that a substantial risk of serious harm would occur by taking his chosen course of action. Further, any negligence on the part of Deputy Reeves is insufficient to constitute deliberate indifference absent exceptional

circumstances. *See e.g., Rogers*, 709 F.3d at 409-10. There have been no exceptional circumstances presented in this case as to Deputy Reeves, and as noted a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting harm. *See Mendoza*, 989 F.2d at 195. Therefore, Plaintiff's failure to provide medical treatment claim against Deputy Reeves is dismissed.

### B. State Law Claims

#### 1. False Arrest/False Imprisonment

Deputy Reeves argues that, for the same reasons previously provided, Plaintiff's state law claim for false arrest/false imprisonment should be dismissed. (Doc. 82-1 at p. 17). Deputy Reeves further argues that the claim should be dismissed because under state law, he is provided immunity pursuant to La. Rev. Stat. §46:2142.[4] (*Id.* at p. 18). Plaintiff argues that he was not the aggressor, thus, he should not have been arrested; and that the lack of probable cause was confirmed when all charges were dismissed. (Doc. 90 at p. 6).

Under Louisiana law, "[a] claim for false arrest and false imprisonment requires the following elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Richard v. Richard*, 2011-0229 (La. 10/25/11), 74 So.3d 1156, 1159. For the reasons already explained, the undisputed facts establish that Deputy

---

[4] La. Rev. Stat. Ann. § 46:2142 provides in pertinent part: "Any law enforcement officer reporting in good faith, exercising due care in the making of an arrest . . . shall have immunity from any civil liability that otherwise might be incurred or imposed because of the report, arrest, or assistance provided."

Reeves' arrest of Plaintiff was lawful, and whether a suspect is eventually convicted is irrelevant to the probable cause analysis. Therefore, Plaintiff's state law false arrest/false imprisonment claim against Deputy Reeves is dismissed.

## 2. Failure to Provide Medical Care

Deputy Reeves argues that Plaintiff's state law claim for failure to render medical care must be dismissed because his duty to protect arrestees only extends to what is reasonable under the circumstances. (Doc. 82-1 at p. 18). Deputy Reeves further argues that what was reasonable in this case was immediately transporting Plaintiff to LPDC to be triaged by a medical professional. (*Id.*). Plaintiff argues that "[Deputy] Reeves' actions of bringing [him] to a jail, without either rendering medical treatment to [him] or making arrangements for a *medical facility*, to render aid to [him] was not reasonable." (Doc. 90 at p. 6).

Under Louisiana law, a police officer owes a duty to a person while in his custody to protect him from injury and to care for his safety. *Lee v. L'Auberge Casino & Hotel*, 2017 WL 3908689, at *5 (M.D. La. Sept. 6, 2017) (citing *Evans v. Hawley*, 559 So.2d 500, 504-05 (La. Ct. App.1990), *writ denied*, 563 So.2d 1156 (La.1990)). This includes "the duty of an arresting officer" to provide reasonable medical care to anyone in their custody "if and when his mental and/or physical condition discloses the need of such services." *Evans*, 559 So.2d at 505 (internal citation omitted). However, this duty extends to doing only "what is reasonable under the circumstances" and is limited to a certain set of risks. *Curran v. Aleshire*, 67 F. Supp. 3d 741, 767 (E.D. La. 2014) (quoting *Griffis v. Travelers Ins. Co.*, 273 So.2d 523, 526 (La. 1973)).

Here, although Deputy Reeves was aware of Plaintiff's bleeding bite wound, and although Plaintiff requested medical attention for said bite wound prior to his arrival at LPDC, Plaintiff has not provided sufficient evidence to establish that Deputy Reeves breached his duty to Plaintiff. The Court recognizes a duty on behalf of Deputy Reeves to act reasonably under the circumstances. The Court, therefore, finds that it was reasonable for Deputy Reeves to transport Plaintiff directly to LPDC to be seen by medical personnel upon his arrival.

The totality of the facts in the present case suggest that Deputy Reeves acted reasonably under the circumstances. *See e.g., Garrison v. City of Berwick*, 417 So.2d 48, 50 (La. Ct. App. 1982). Plaintiff's injury was not so severe or life threatening, at the time of his arrest, that Deputy Reeves was required to divert Plaintiff to a hospital. Deputy Reeves was well aware that Plaintiff would receive immediate medical attention upon his arrival to LPDC, which he indeed received. (Doc. 91-1 at ¶ 11). Again, medical personnel did not inform Deputy Reeves that Plaintiff needed to be taken to a hospital; rather, medical personnel triaged Plaintiff and noted his injuries. (Doc. 77-3 at p. 1). Therefore, Plaintiff's state law claim against Deputy Reeves for failure to provide medical treatment is dismissed.

### 3. Other State Law Claims

Although Plaintiff's core complaint does not specify against whom the following claims are being brought, Plaintiff asserts additional state law claims for negligent and intentional infliction of emotional distress, cruel treatment, and malicious prosecution, which he contends were the proximate and legal causes of his injuries. (Doc. 63 at ¶ 52). Deputy Reeves argues that each claim should be dismissed because

16

Plaintiff has presented no evidence to establish that Deputy Reeves did not have probable cause or that Deputy Reeves' conduct was unreasonable or "extreme and outrageous." (Doc. 82-1 at pp. 19–20).

Plaintiff argues that transporting him directly to LPDC, "instead of a medical facility, was extreme and outrageous" conduct, which caused him to suffer "severe emotional distress due to not receiving medical treatment prior to entering [LPDC]." (Doc. 90 at p. 7). Plaintiff makes no argument, and the record is devoid of evidence, to support his malicious prosecution and cruel treatment claims. Thus, they are dismissed.

The elements of intentional infliction of emotional distress, include: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "Liability arises only where the mental suffering or anguish is extreme." *Id.* at 1210. Moreover, a claim of negligent infliction of emotional distress also requires that the plaintiff suffer emotional distress. *Page v. Benson*, 2012-244 (La.App. 3 Cir. 11/7/12), 101 So.3d 545, 555.

Here, however, Plaintiff has not alleged any facts showing that he suffered emotional distress, severe or otherwise; that Deputy Reeves' actions amount to

"extreme and outrageous" conduct; or that Deputy Reeves desired or knew that such distress would result from his alleged conduct. Therefore, Plaintiff's intentional and negligent infliction of emotional distress claims are dismissed.

## IV.   SHERIFF ARD'S MOTION FOR SUMMARY JUDGMENT

Under Louisiana law, it is clear that "the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office." *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 614 (E.D. La. 1998) (citations omitted). Because the Court finds that no state law tort has been committed by Deputy Reeves under Louisiana state law, the vicarious liability claim against Sheriff Ard must be dismissed. *See Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 585 (5th Cir. 2012); *Bates v. McKenna*, 2012 WL 3309381, at *7 (W.D. La. Aug. 13, 2012) ("[Plaintiff's] state law vicarious liability claim against the City also fails because . . . there is no underlying tortious act on the part of [the defendant officer]"); *Shepherd v. City of Shreveport*, 2018 WL 1513679, at *10 (W.D. La. Mar. 27, 2018); *Courville on Behalf of Vincent v. City of Lake Charles*, 98-73 (La.App. 3 Cir. 10/28/98, 20), 720 So.2d 789, 800 ("Because we affirm the finding of no negligence on the part of the LCPD officers, the claim of vicarious liability against the City must fall").

Additionally, to the extent Plaintiff attempts to bring other state law claims, independently against Sheriff Ard, they are also dismissed due to Plaintiff's failure to set forth any evidence in support of those claims against Sheriff Ard. For these reasons, Sheriff Ard's motion for summary judgment is granted.

## V.   MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Failure to Provide Medical Treatment

#### 1.  Federal Law Claim

Municipal Defendants argue that there is a lack of "proximate cause" between their actions and Plaintiff's injury. (Doc. 74-1 at p. 1). They further argue that based on the photograph of the wound, it is apparent that Plaintiff's failure to have the wound treated upon his release from LPDC custody was the proximate cause of any subsequent worsening of the wound. (*Id.* at p. 3). In opposition, Plaintiff argues (1) that the Municipal Defendants' failure to act was a proximate cause of his injuries, (2) that the Municipal Defendants violated their own policies and procedures regarding the medical treatment of inmates, and (3) that the Municipal Defendants were deliberately indifferent under the Eighth Amendment (Doc. 77 at pp. 3–4, 10–15), which as previously provided, in inapplicable under the facts of this case. (*See supra,* n.2). Rather, the appropriate standard, which both parties failed to recognize is that of *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Generally, where, as here, a pretrial detainee's claim of failure to provide medical care or protection from violence does not challenge a condition, practice, rule, or restriction, but rather attacks the episodic acts or omissions of a state jail official, the question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996).

Municipalities may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation,

or decision officially adopted and promulgated by that body's officers." *Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir.), *cert. denied*, 138 S. Ct. 510 (2017) (quoting *Monell*, 436 U.S. at 690). In order to survive summary judgment, Plaintiff must demonstrate that a question for trial remains as to whether "action pursuant to official municipal policy caused their injury." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Put differently, "[t]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

Here, the Municipal Defendants' motion for summary judgment is not properly briefed given that important legal issues, such as the standard for municipal liability under § 1983 or the Fourteenth Amendment's due process clause as it pertains to pretrial detainees, have not been addressed. Therefore, the Court is unable to determine whether Plaintiff's federal claims against the Municipal Defendants should survive summary judgment. Neither the Municipal Defendants nor Plaintiff have addressed whether an action taken pursuant to official municipal policy caused Plaintiff's injury, or any other federal standard under § 1983 or the Fourteenth Amendment. Because the Court cannot make a determination on the briefings before it, summary judgment will be denied without prejudice. *See e.g., May v. Strain*, 55 F. Supp. 3d 885, 901 (E.D. La. 2014).

### 2. State Law Claim

Because the Court requires additional briefing by the parties to sufficiently address the federal law claim, the Court will forgo its ruling on the state law claim until appropriate.

### B. Failure to Preserve Evidence

Plaintiff argues that under Louisiana Civil Code Article 2315,[5] the torts of "impairment of a civil claim and intentional spoliation of evidence" are applicable under the facts of this case because "the [Municipal] Defendants had complete control of the image of [Plaintiff's] leg and it has a written policy to preserve the image, yet the [Municipal] Defendants still failed to preserve the image because it was deleted." (Doc. 77 at pp. 17–19). Municipal Defendants argue that spoliation is inapplicable under the facts of this case because given that "Plaintiff was [] in the process of being booked at the jail" when the picture was taken, there was no notice that the evidence would be the subject of litigation and thus, no obligation to preserve it at the time it was deleted. (Doc. 79 at pp. 4–5).

The Court agrees. Under Louisiana law, "spoliation of evidence refers to the intentional destruction of the evidence for the purpose of depriving the opposing party of its use at trial." *Herster v. Bd. of Supr. of La. State Univ.*, 221 F. Supp. 3d 791, 796 (M.D. La. 2016), *aff'd in part*, 887 F.3d 177 (5th Cir. 2018) (quoting *Tomlinson v. Landmark American Ins. Co.*, 2015-0276 (La.App. 4 Cir. 3/23/16), 192 So.3d 153, 160). Nonetheless, "[t]he party having control over the evidence must have had an

---

[5] "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Ann. art. 2315(A).

obligation to preserve it at the time it was destroyed." *Id.*; *Everhardt v. La. Dept. of Transp. and Dev.*, 2007–0981 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1044 (quoting *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998)). Such a duty "arises when the party has notice that the evidence is relevant to the litigation." *Id.*

Here, the image was created and deleted during a time when there was no obligation to preserve it. At the time the photograph was taken, LPDC medical personnel were not on notice that the photograph would be relevant to litigation, considering that Plaintiff had recently been placed into LPDC custody. In addition, there is no evidence that any Municipal Defendant knew of the potential for litigation or that any medical personnel intentionally deleted the image for the purpose of depriving Plaintiff of its use at trial. Therefore, the failure to preserve evidence claim is dismissed.

## VI.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the Municipal Defendants' **Motion for Summary Judgment (Doc. 74)** is **DENIED WITHOUT PREJUDICE**. Municipal Defendants may submit a properly briefed Motion for Summary Judgment that is consistent with the Court's Ruling on or before July 23, 2018.

**IT IS FURTHER ORDERED** that Deputy Reeves' **Motion for Summary Judgment (Doc. 82)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Sheriff Ard's **Motion for Summary Judgment (Doc. 83)** is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims brought by Plaintiff, Justin

Abbott against Defendants, Sheriff Jason Ard, and Deputy Brian Reeves are hereby

**DISMISSED WITH PREJUDICE**.


Baton Rouge, Louisiana, this *16*‍th day of July, 2018.


_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**