UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| JUSTIN ABBOTT | CIVIL ACTION |
|---|---|
| VERSUS | |
| TOWN OF LIVINGSTON, ET AL. | NO: 16-00188-BAJ-EWD |

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 102)** filed by Defendants the Parish of Livingston, Cheryl Smith, and Misha McNabb. Plaintiff Justin Abbott filed an opposition. (Doc. 109). For the following reasons, the **Motion for Summary Judgment (Doc. 102) is GRANTED.**

I. **BACKGROUND**

The facts taken in the light most favorable to Plaintiff are as follows. On September 30, 2015, Plaintiff was involved in a domestic dispute with his wife, when she bit his left leg. (Doc. 77-8 at p. 10-12). Plaintiff was then arrested for domestic abuse and taken to the Livingston Parish Detention Facility (the "Jail"). *Id.* at p. 12-16. Plaintiff told the arresting officer that he needed medical attention because his leg was bleeding. *Id.* The officer, however, transported Plaintiff directly to the Jail. *Id.* At the Jail, Misha McNabb, a nurse, saw Plaintiff and wrote on a triage form that he had a sinus infection and an abrasion on his left shin that was bleeding. *Id.* at p. 16; Doc. 75-5. She took a photo of his wound, but did not provide him any treatment. (Doc. 77-8 at p. 17). Plaintiff then went to a cell. *Id.* at p. 17-18.

1

On his third day in the Jail, October 2, 2015, Plaintiff completed a written "Request for Medical Attention" form and indicated: "Need medication[,] sinus infection—drainage and cough—was taking Omnicef [and] Zertec-D [sic] before coming to LPDT [sic]. Severe diarrhea [sic] Detoxing—do not have my Zanax Rx [sic]—having anxiety." (Doc. 77-3 at p. 7). Plaintiff did not mention the wound on his leg. *Id.* In the medical evaluation section an unknown person wrote "Put on DC 10-2-15", which presumably means put Plaintiff on "doctor call" so that he could see a doctor. *Id.* Plaintiff also made two or three other requests for medical treatment, but he did not receive any treatment. (Doc. 77-8 at p. 26).

On October 6, 2015, Plaintiff was scheduled to be released from the Jail on bond. (Doc. 77-8 at p. 23). That day, the Jail also scheduled him to see a doctor, but rather than visiting the doctor, Plaintiff chose to be released from the Jail. *Id.* at p. 23. Also on that day, he called his primary care physician to get medication for his sinus infection, but he did not complain about his leg. *Id.* at p. 30. He also washed his leg wound. (Doc. 74-4 at p. 18). Six days after he was released, while Plaintiff was working in Florida, his leg started "to swell and ooze" and he could barely walk. (Doc. 74-4 at pp. 18–19). A few days later, on October 15, 2015, Plaintiff went to a hospital in Miami, Florida. (Doc. 74-12). The doctor told him that he had a growth of methicillin-resistant staphylococcus aureus ("MRSA" or "staph infection"). (Doc. 77-12 at p. 41). Plaintiff now has a scar on his leg. (Doc. 77-18).

Plaintiff sued the Parish of Livingston, Sheriff Jason Ard, Officer Brian Reeves, Cheryl Smith, and Misha McNabb in his Second Amended Complaint. (Doc.

63 at ¶ 2). In an earlier summary judgement ruling, the Court dismissed the claims against Sheriff Ard and Brian Reeves. (Doc. 101 at p. 23). The Court denied without prejudice the Parish of Livingston, Cheryl Smith, and Misha McNabb's motion for summary judgment because they failed to brief "important legal issues, such as the standard for municipal liability[.]" *Id.* at p. 20. Smith is the Medical Administrator of the Livingston Parish Detention Center and McNabb is a Nurse. (Doc. 63 at ¶ 2).

Plaintiff claims that the Parish of Livingston, Cheryl Smith, and Misha McNabb are liable under 42 U.S.C. § 1983 for violating Plaintiff's "right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendment" by "establishing and maintaining policies, patterns, or practices that they knew would deprive inmates with serious medical conditions." *Id.* at ¶ 32. Plaintiff also claims that Smith, McNabb, and the Parish of Livingston are liable for failing to render timely and adequate medical care to Plaintiff under Louisiana law. *Id.* at ¶ 49. Finally, Plaintiff claims that the Parish of Livingston is liable under Louisiana law for "for its negligence in failing to properly train and supervise its staff members and as the governing authority responsible for medical care within the Livingston Parish Detention Center[.]" *Id.* at ¶ 50.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3

In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III. DISCUSSION

### A. Section 1983 Individual Capacity Claim

Plaintiff claims that Cheryl Smith, the medical administrator of the Jail, is liable in her individual capacity. (Doc. 63 at ¶1D). In a § 1983 suit, vicarious liability cannot be used to hold a supervisory official liable for the acts of a subordinate. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). There is no evidence that Smith ever interacted with Plaintiff or personally directed anyone not to treat Plaintiff, and therefore Plaintiff's individual capacity claim against her under § 1983 is dismissed.

### B. Section 1983 Official Capacity Claim

Plaintiff claims that the Parish of Livingston, Cheryl Smith, and Misha McNabb are liable under § 1983 for violating Plaintiff's "right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendment" by "establishing and maintaining policies, patterns, or practices that they knew would deprive inmates with serious

4

medical conditions." (Doc. 63 at ¶ 32).[1] Defendants argue that no official policy promulgated by a policymaker led to a violation of Plaintiff's constitutional rights. (Doc. 102. at p. 2). Plaintiff argues that the Livingston Parish Detention Center created a custom of tolerance of federal rights violations when it deprived him of medical treatment and then none of the nurses or administrators involved were disciplined. (Doc. 105 at p. 5).

Municipal liability under § 1983 for an official capacity claim "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (internal quotation marks omitted). "Official policy" means "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority" or "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citations omitted).

Plaintiff does not argue that a written policy led to his injuries, rather he alleges that it is Livingston Parish's custom to provide inadequate medical treatment. But a custom can only exist if it is a persistent and widespread practice. (Doc. 109).

---

[1] The rights of pretrial detainees flow from the Fourteenth Amendment, while the rights of convicted inmates flow from the Eighth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). Therefore, to the extent Plaintiff relies on the Eighth Amendment, these claims are dismissed.

5

"Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) (en banc)). Plaintiff has failed to provide any evidence that the Livingston Parish Detention Center has a widespread practice of failing to provide adequate medical attention that constitutes a custom. Indeed, Plaintiff only relies on this incident to suggest that a custom exists. (Doc. 109). While it is possible that this is not the first time that the Livingston Parish Detention Center has refused medical treatment, Plaintiff has not provided any such evidence.

Plaintiff also argues that a single action can constitute an official policy. "[A] single decision by a policymaker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000). However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)). Nurse McNabb is the only Defendant who allegedly had personal contact with Plaintiff, and Plaintiff does not even suggest that she is a policymaker. Plaintiff's official capacity claims are therefore dismissed.

### C. Failure to Provide Medical Care

Plaintiff claims that the Jail's Medical Administrator Cheryl Smith, Nurse Misha McNabb, and the Parish of Livingston were negligent by failing to provide adequate medical care to Plaintiff. (Doc. 63 at ¶ 49). To establish negligence, a

plaintiff must show that: (1) "the defendant's conduct was cause in fact of the plaintiff's injuries; (2) the defendant had a duty to conform conduct to a specific standard; (3) the defendant breached that duty; (4) the defendant's conduct was the legal cause of plaintiff's injuries; and (5) plaintiff sustained actual damages." *Fruge v. ONOB, Inc.*, 32 So. 3d 1115, 1118 (La. Ct. App. 2010). "Under Louisiana law prison authorities owe a duty to provide inmates with reasonable medical care." *Breach v. Copes*, 2007-0917, 2007 WL 4327842 (La. Ct. App. 2007).

Defendants contend that Plaintiff must provide some expert opinion to show that Plaintiff's leg injury was caused by Defendants actions. (Doc. 102-2 at p. 5). On the other hand, Plaintiff contends that a reasonable juror could, without an expert, conclude that Plaintiff's infection was caused by Defendants. (Doc. 109 at p. 7). "Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Schultz v. Guoth*, 57 So. 3d 1002, 1006-07 (La. 2011); *Pfiffner v. Correa*, 643 So.2d 1228, 1234 (La. 1994). The Louisiana Supreme Court, though, has held that expert testimony is not required where "there are obvious unnecessary delays in treatment which constitute medical malpractice and where causation is evident." *Pfiffner*, 643 So.2d at 1234. The Court noted that "one obvious situation would be where a seriously injured patient is left to bleed to death in an emergency room." *Id.*

This is not, however, a case where causation can be determined by a lay jury like leaving a patient bleeding in an emergency room. There are several complex

7

medical questions that must be answered by an expert. If Plaintiff went to his scheduled doctor's appointment at the Jail, would the doctor have discovered that Plaintiff had an infection in his leg? If the doctor treated his leg, would Plaintiff have still developed MRSA or developed other injuries? How much did the delay in getting an appointment at the Jail contribute to Plaintiff's injuries? What is the interaction between Plaintiff's sinus infection and the infection in his leg? How long does MRSA take to develop in a wound? The list could go on.

Courts routinely grant summary judgment in similar cases where a Plaintiff has not supported its opposition to summary judgment with an expert opinion. *See, e.g., Davis v. Bio-Med. Applications of Louisiana LLC*, 335 F. App'x 404, 408 (5th Cir. 2009) (affirming district court's grant of summary judgment because Plaintiff failed to provide expert testimony when Plaintiff died from an apparent infection related to dialysis); *Dick v. United States*, No. 06-CV-0434, 2007 WL 1557208, at *5 (W.D. La. May 25, 2007) (granting summary judgment where Plaintiff failed to provide an expert about the proper treatment of cancer). The Court will similarly grant Defendants' motion for summary judgment on Plaintiff's negligence claims.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 102)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against the Parish of Livingston, Cheryl Smith, and Misha McNabb are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 14th day of August, 2018.

_____
**BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**